UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Mary Williams-Turk,

    Plaintiff,

v.

Van Buren Township Sergeant Charles Bazzy, *et al.*

    Defendants.
    _____/

Case No. 09-14786

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [35]**

This action, alleging a Fourth Amendment violation for excessive force against Defendant John Kapchus, is brought pursuant to 42 U.S.C. § 1983. It arises from an incident that occurred in the early morning hours of January 21, 2008. Plaintiff Mary Williams-Turk alleges that Defendant John Kapchus, along with Co-Defendants Bazzy and Hamblin, violated her Fourth Amendment rights by using excessive force after she was handcuffed.[1] Specifically, Plaintiff alleges that Defendant Kapchus put her handcuffs on too tight, pulled her to her feet by her handcuffs when she fell, and pulled on her arms, handcuffs, or both while walking Plaintiff to a vehicle. Plaintiff further alleges that Defendant's excessive force caused her to suffer a fractured right wrist that

---

[1] Defendant Kapchus's summary judgment motion is the second such motion in the instant case. The first motion involved original Co-Defendants Bazzy and Hamblin, which this Court denied. *Williams-Turk v. Bazzy*, No. 09-14786, 2010 WL 5071310 at *1 (E.D. Mich. Dec. 7, 2010). Defendant Kapchus was made a party to this case following Co-Defendants' first motion.

1

required casting, physical therapy, and surgery. This matter is now before the Court on Defendant's motion for summary judgment arguing that there was no Fourth Amendment violation and Defendant is entitled to qualified immunity from Plaintiff's constitutional claims. For the reasons set for below, Defendant's motion is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Plaintiff's Fourth Amendment excessive force claim that her handcuffs were too tight and DENIED as to the rest of her claims alleging excessive force after she was handcuffed.

**I.    Facts**

The Court is familiar with the facts of this case, having recently issued an opinion denying Co-Defendants Bazzy and Hamblin's motion for summary judgment [29]. The relevant facts are reiterated here.

On January 20, 2008, Plaintiff was hosting a party at her house in Belleville. (Def.'s Mot. for Summ. J., Ex. 1, Pl.'s Dep. at 14.) The party lasted from 2:00 p.m. to late into the evening. (*Id.* at 15.) It was a going away party in honor of Plaintiff's son, nineteen year-old Dominique Williams, who was leaving for military service. (*Id.* at 14.) At the time the party ended with Plaintiff's arrest, there were between eight and ten guests at her house. (*Id.* at 19.) Plaintiff testified that she drank two glasses of wine between 2:00 p.m. and 9:00 p.m. (*Id.* at 20.)

Around 12:45 a.m., on the morning of January 21, 2008, Co-Defendant Officers Bazzy and Hamblin arrived at Plaintiff's house. (*Id.* at 21.) They were responding to a call from Plaintiff's neighbor who reported seeing a young woman upset in the street. (Pl.'s Resp., Ex. 3, Hamblin's Report at 1.) Officer Hamblin found the young woman, identified as Lori McGlone (age 17), and brought her to Plaintiff's house. (*Id.*)

Plaintiff met Officers Bazzy and Hamblin, greeted them, told them her name, and identified herself as the homeowner. She asked the officers for their identification and who let them into the home and what was going on. The officers explained that they were dispatched to the area and that they found an upset Lori on the street without a coat appearing intoxicated.[2] (Pl.'s Dep. at 24.) Although the officers claim that Tommy Williams III (age 21), Lori's boyfriend and Plaintiff's son, let them into Plaintiff's house, Lori testified that she opened the door to the house, went in herself, and the officers followed her inside. (*Id.* at 22-23; Def.'s Mot. for Summ. J., Ex. 5, McGlone-Williams Dep. at 22.)

Officers Bazzy and Hamblin began interrogating Plaintiff because Lori had been drinking. Plaintiff told them that if Lori had been drinking, she "stole it" from Plaintiff; Plaintiff did not serve her or anyone underage. (Pl.'s Dep. at 23-24.) In response to the officers' request, Plaintiff went to get her ID from her purse which was in a kitchen cupboard. At this time, the officers were tracking snow and mud throughout Plaintiff's home, and Sgt. Bazzy, without permission, started going through Plaintiff's cupboards and other possessions in Plaintiff's great room. Plaintiff told him to quit. She was upset that officers were in her home without her permission, were tracking mud and snow throughout her home, and were ignoring her questions. Plaintiff returned to the foyer and gave Officer Hamblin her ID. (*Id.* at 24-27.)

At this point, Defendant Kapchus opened the front door and stood in the doorway. (*Id.* at 27-28.) Defendant Kapchus, an employee of the Belleville Police

---

[2] The police report reveals that a preliminary breath test performed on Lori that night in the police car showed .056% alcohol. (Hamblin's Report at 2.)

Department, arrived at Plaintiff's house to assist the other officers. (Def.'s Mot. for Summ. J., Ex. 3, Kapchus Report at 1.) Plaintiff identified herself to this officer and asked for his identification because his jacket was zipped up and his identification was covered up. (Pl.'s Dep. at 27-28.) He replied, "I don't have to tell you shit." (*Id.*) Defendant Kapchus's report filed at the time stated that he did provide Plaintiff with a business card. (Kapchus Aff. at 1.) It was a bitterly cold night so Plaintiff asked Defendant to either come in or stay out but close the door. (Pl.'s Dep. at 28.)

Defendant Kapchus and Sgt. Bazzy then pulled Tommy out the door and threw him on the ground. He was bloody and lying face down with police surrounding him. Plaintiff had no idea why her son was being dragged out of the house and tackled on the front lawn. The officers did not tell her that he was being arrested. (*Id.* at 29, 32-33, 40.) Officer Hamblin's incident report states that after Tommy Williams provided the officers with his identification, they ran a lien check on him that revealed several misdemeanor warrants, and they arrested him on those outstanding misdemeanor warrants. (Hamblin's Report at 2.)

After seeing her son pulled out of the house and thrown to the ground, Plaintiff called her sister who is a retired police officer and asked her if the police could just walk into her home, pull her son out, and tackle him to the ground. Plaintiff told her son Tommy that she was going to call an attorney. She walked out of her home, down two porch steps, and attempted unsuccessfully to reach an attorney she knew. (Pl.'s Dep. at 32-34.)

Plaintiff then attempted to reenter her house. Defendant Kapchus had returned to the porch and was leaning on the doorknob. Plaintiff asked to be let into her house so

4

she could get a jacket. Defendant Kapchus refused to let Plaintiff into the house and said that "You're not going anywhere." (*Id.* at 34.) Plaintiff's son Dominique tried to give Plaintiff her jacket by opening the door but Defendant Kapchus closed the door with his body. Plaintiff asked Defendant Kapchus again to let her get a jacket. (*Id.* at 34-36.) Defendant Kapchus then began yelling, "Ouch, she's hurting me. She's hurting me." (*Id.* at 36.) Plaintiff replied, "Stop it. I'm not hurting you." (*Id.*) Plaintiff testified that she was across the porch at the time and denies striking Defendant Kapchus. (*Id.* at 36-37.) Plaintiff's son Dominique testified that he saw Plaintiff attempt to open the door and Defendant Kapchus close it. (Def.'s Mot. for Summ. J., Ex. 4, D. Williams Dep. at 31.)

At this point Plaintiff was placed under arrest. The parties agree that three officers placed Plaintiff in handcuffs but dispute which three officers did so. Defendant Kapchus avers that he did not participate in the handcuffing but did walk the then-handcuffed Plaintiff to a patrol car. (Def.'s Mot. for Summ. J., Ex. 6, Kapchus Aff. at ¶¶ 9-10.) Officer Herrick denies involvement in Plaintiff's handcuffing. (Def.'s Mot. for Summ. J., Ex. 8, Herrick Dep. at 24.)

The DVD provided by Co-Defendants Bazzy and Hamblin suggests that Officer Herrick was not the third officer involved in Plaintiff's handcuffing. The DVD has three tracks; each track has a video and two audio tracks. One audio track recorded the officers themselves and the other was an in-car recording. At approximately 1:00:45 a.m., Plaintiff's son Tommy appears to have been placed in Sgt. Bazzy's vehicle. Plaintiff appears to have been placed under arrest at approximately 1:01:17 a.m. and can be heard screaming at 01:01:25. At that time, Sgt. Bazzy's in-car recording and Officer Herrick's on-person recording suggest that Officer Herrick is speaking to Tommy

5

who is in Sgt. Bazzy's vehicle. At approximately 1:02:00, Officer Herrick introduces himself to Tommy as "Chris" (Officer Herrick's first name). (Co-Defs.' Mot. for Summ. J., Ex. 3, DVD.)

Plaintiff testified that her handcuffs were too tight. More importantly, she testified that after she was handcuffed, she was led off of her porch, and she began to fall. The officers then "pulled," "yanked," or "scooped" Plaintiff back into a standing position by the handcuffs. (Pl.'s Dep. at 42-43.) On the DVD, Plaintiff can be heard screaming in pain at this time. (DVD at 1:01:25.)

Defendant Kapchus and another officer walked Plaintiff away from the porch towards the parked police cars. (Def.'s Mot. for Summ. J., Ex. 8, Herrick Dep. at 10.) Plaintiff told the officers that her handcuffs were too tight, that her arm was hurting, and that they were hurting her. (Pl.'s Dep. at 45.) At 1:02:43 a.m., the video shows Plaintiff asking to have her handcuffs loosened. At approximately 1:03:18 a.m., Plaintiff stops in front of a parked police car and an officer loosens her cuffs. Officer Herrick's on-person audio track suggests that he was the one who loosened them.

Defendant Kapchus then led Plaintiff to Officer Herrick's car. Plaintiff testified that the officer who was leading her was "yanking [her] around by the handcuffs." (Pl.'s Dep. at 46.) Plaintiff testified that this jerking caused her further injury. Defendant denies that he pulled Plaintiff by the handcuffs and avers that he held Plaintiff by her biceps as he was trained to do. (Kapchus Aff. at ¶¶ 14-15.)

The video shows Plaintiff and Defendant walking around the front of the car. It is unclear whether Defendant Kapchus's left arm is on the handcuffs but his right arm appears to be on her arm. (DVD.) Officer Herrick can be heard saying "put her in my car

6

John [Kapchus]." At 1:04:00-1:04:45 a.m., Plaintiff can then be heard on the video telling Defendant to "quit pulling on me like that…you're hurting my arm." Plaintiff testified that Defendant Kapchus had a difficult time placing her in the car. (Pl.'s Dep. at 48.) As Plaintiff is placed in the car, she can be heard complaining about how roughly Defendant is handling her. (DVD.)

Officer Hamblin transported Lori and Sgt. Bazzy transported Plaintiff's son Tommy to the police station. (DVD.) Officer Herrick transported Plaintiff to the police station, and she spent the rest of evening there. She was booked on the following misdemeanor charges: (1) assault and battery of a police officer; (2) furnishing alcohol to a minor; and (3) obstructing justice. She requested medical attention but no one attended to her. The police released Plaintiff between seven and nine in the morning. (Pl.'s Dep. at 53-56.)

On January 21, 2008 at 9:29 a.m., Plaintiff was treated at Western Wayne Urgent Care for injuries to her right wrist. An orthopedic surgeon diagnosed a fractured right wrist. Plaintiff's right wrist was casted twice during a four and one-half week period. Plaintiff then had aggressive physical therapy at her surgeon's recommendation. During a recheck in mid-April 2008, Plaintiff's surgeon diagnosed her with cubital tunnel of the right hand and a right wrist ligament tear. Plaintiff ultimately had surgery for cubital tunnel release on July 6, 2010. (Pl.'s Resp., Ex. 2, Pl.'s Medical Records; Pl.'s Dep. at 58-64, 71-72.)

Defendant commissioned an independent medical examination of Plaintiff by Dr. Jeffrey E. Gorosh. (Def.'s Reply, Ex. 12, Gorosh's Independent Medical Evaluation at

7

1.) Dr. Gorosh did not find evidence of a fracture. (*Id.* at 2.) Dr. Gorosh did not find it likely that Plaintiff's injuries were the result of her being handcuffed too tightly.[3]

As to the three misdemeanor charges resulting from the January 21, 2008 incident, Plaintiff entered a nolo contendere plea to the furnishing of alcohol to a minor on March 4, 2008. She was required to pay a fine and court costs, the matter was taken under advisement for six months (delayed sentence); and at the end of that six-month period, the charge was dismissed. (Co-Defs.' Ex. 4, Register of Action 08-0407; Pl.'s Dep. at 58.) The other two charges for assault and battery on a police officer and obstructing justice were dismissed without a plea or payment of any fine or costs. (Co-Defs.' Ex. 5, Register of Action 08-0406; Co-Defs.' Ex. 6, Register of Action 08-0405; Pl.'s Dep. at 58.)

## II.     Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

---

[3] "Based on [sic] review of records, based on my interview of this patient, based on the clinical history that I obtained and based on physical examination, I do not find that there is any significant evidence of wrist pathology. In all likelihood, I find that the MRI findings or incidental findings do not represent any significant pathology and are not the result of injury. Also, I do not feel within a reasonable degree of medical certainty that the alleged injuries incurred when she was handcuffed had anything significant to do with the development of cubital tunnel syndrome. In fact, it is more likely that this would be an occupational hazard than a hazard of being handcuffed. There is no allegation of injury that would cause compression of the ulnar nerve at the elbow." (Gorosh's Independent Medical Evaluation at 1.)

8

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light

9

most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

### III. Analysis

Defendant moves for summary judgment arguing that (1) the force used on Plaintiff was reasonable because her handcuffs were loosened "as soon as practicable," (2) the video evidence conclusively shows that there was no excessive force and therefore inconsistent testimony should be ignored, and (3) Defendant is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim. (Def.'s Mot. at 10.) The Court begins its analysis with Defendant's qualified immunity arguments.

### A. Qualified Immunity

In a recent decision, the Sixth Circuit addressed qualified immunity in the context of a § 1983 excessive force case. *See Grawey v. Drury,* 567 F.3d 302 (6th Cir. 2009). It began, as this Court does, with a discussion of the doctrine of qualified immunity and how the Court determines whether a defendant is entitled to the protection afforded by that doctrine.

The doctrine of qualified immunity shields "'government officials performing discretionary functions'" from "'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 309 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982)). On summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party, Plaintiff in this case. Viewing the facts in that light, the Court must then determine "whether: 1) the violation of a constitutional right has occurred; and 2) the constitutional right at issue 'was clearly established at the time of

defendant's alleged misconduct.'" *Id.* (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001), and citing *Dunigan v. Noble,* 390 F.3d 486, 491 (6th Cir. 2004)). Although the Supreme Court, in *Pearson v. Callahan,* 555 U.S. 223 (2009), recently held that the courts now have discretion to address the second step first when appropriate, this Court, similar to the Sixth Circuit in *Grawey v. Drury,* will first examine whether Plaintiff has presented evidence of a constitutional violation. *Grawey,* 567 F.3d at 309.

### B. Excessive Force

Defendant argues that, under prevailing Sixth Circuit precedent, there can be no Fourth Amendment claim for excessive force under the facts presented here where Plaintiff's handcuffs were immediately loosened after she complained to officers that they were too tight. In support, Defendant relies on *Burchett v. Kiefer,* 310 F.3d 937, 945 (6th Cir. 2002) (holding that the defendant officer did not violate the plaintiff's constitutional rights because the handcuffs were removed when the officer learned of the plaintiff's complaints). Defendant's argument ignores Plaintiff's claims that Defendant Kapchus violated her rights by pulling her up by her handcuffs when she fell and gratuitously yanked her around the yard by her handcuffs or arm.

The Court's task is to evaluate Defendant's conduct "under the Fourth Amendment's 'objective reasonableness' standard." *Roberts v. Manigold,* 240 F. App'x 675, 677 (6th Cir. 2007) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 197 (2004)). Under the Fourth Amendment, a police officer may use only such force as is objectively reasonable under the circumstances. *Graham v. Connor,* 490 U.S. 386, 397 (1989). Determining whether there has been a Fourth Amendment violation requires consideration of "the severity of the crime at issue, whether the suspect poses an

11

immediate threat to the safety of the officers or others, whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The Court should judge the lawfulness of the conduct from the 'perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.'" *Morrison v. Bd. of Tr. of Green Twp.,* 583 F.3d 394, 401 (6th Cir. 2009) (quoting *Graham,* 490 U.S. at 396).

Applying the above precedent and considering the undisputed fact that Plaintiff's handcuffs were loosened by the police immediately after she complained, this portion of her Fourth Amendment excessive force claim is dismissed with prejudice.

Plaintiff also claims that Defendant used excessive force on her <u>after</u> she was handcuffed – by pulling her off the porch by her handcuffs, by yanking and pulling her up to her feet by her handcuffs as she started to fall, by pulling her by the arm and/or handcuffs while leading her to the patrol car, and by roughly shoving her in the police car. *See Morrison*, 583 F.3d at 401 (observing that "[a] reviewing court analyzes the subject event in segments when assessing the reasonableness of a police officer's actions.").

Viewing the facts in the light most favorable to Plaintiff and applying the above three *Graham* factors, Defendant's use of force was not objectively reasonable. First, Plaintiff was charged with three misdemeanors; not serious felony charges. Second, Defendant presented no facts showing that, *after* Plaintiff was handcuffed, she posed an immediate threat to the safety of the officers or others. Finally, Plaintiff testifies that she was not actively resisting arrest or attempting to evade arrest by flight. It is objectively unreasonable to use physical force on a person under these facts. *See Morrison,* 583 F.3d at 404 (observing that the Sixth Circuit "has consistently held in light of the

reasonableness standard that 'use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law.'") (quoting *Baker v. City of Hamilton,* 471 F.3d 601, 607-09 (6th Cir. 2006)). *See also Vance v Wade,* 546 F.3d 774, 783-84 (concluding that the defendant officer's "pulling up on" the plaintiff's "handcuffs while his hands were cuffed behind his back" and shoving and throwing the plaintiff into a police car "could constitute an excessive use of force"); *Polk v. Hopkins,* 129 F. App'x 285, 287, 290-91 (6th Cir. 2005) (finding that "a jury question existed" as to whether the force the defendant officer used on the plaintiff was reasonable and further determining that the defendant officer was not entitled to qualified immunity when he "allegedly jerked [the plaintiff] up by the handcuffs and pushed her into the police car" after she had already been handcuffed). Taking the evidence in the light most favorable to Plaintiff but viewing it from the perspective of a reasonable officer on the scene, Plaintiff's evidence establishes an excessive force claim against Defendant.

The Court rejects Defendant Kapchus's claim that the video evidence conclusively shows there was no excessive force and that contradictory testimony should be excluded. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The DVD does not establish that Defendant was not on the porch after Plaintiff was handcuffed and during her possible fall. Despite Defendant's claims to the contrary, a reasonable jury could find support in the record for Plaintiff's claim that she fell and was pulled back to her feet by the handcuffs. The DVD does not show clearly whether Plaintiff fell and whether she was pulled back up by the handcuffs, but it does capture Plaintiff screaming. Plaintiff also testified that Defendant Kapchus used excessive force while leading her to the patrol car and she can be heard on the DVD telling Defendant to "stop pulling on me like

that." (Pl.'s Dep. at 46; DVD.) There is no blatant contradiction of the sort that *Scott* addresses.

### C.     Violation of Clearly Established Right

The Court now considers Defendant's argument that, even if he did violate Plaintiff's Fourth Amendment right to be free from excessive force, he is entitled to qualified immunity because a reasonable officer in his position would not have known that yanking Plaintiff up to her feet by the handcuffs when she began to fall or pulling her by the arm or handcuffs to and into the car despite her cries that Defendant Kapchus was hurting her violated the Fourth Amendment of the Constitution.[4] This Court disagrees.

Viewing the facts in the light most favorable to Plaintiff, at the time of Defendant's challenged conduct, she was handcuffed and thus did not pose a risk to the safety of Defendant or others. Plaintiff also testified that she was not resisting arrest and was not attempting to flee. She had been neutralized, and there was no need for Defendant's gratuitous use of force when moving her off the porch or escorting her to and inside the patrol car. As the *Morrison* court recently observed, "in this Circuit, the law is clearly established that an officer may not use additional gratuitous force once a suspect has been neutralized." *Morrison,* 583 F.3d at 408 (internal quotation marks and citations omitted). It is immaterial that the facts presented here differ somewhat from those in the

---

[4] Defendant Kapchus cites *Gorajczyk v. City of St. Clair Shores* in support of his argument. No. 08-14764, 2010 WL 3488646, at *5, *6 (E.D. Mich. August 31, 2010) (Cook, J.). This case is distinguishable from the instant case. In *Gorajczyk*, the defendant officer pulled the plaintiff up from the ground by his arm. (*Id.*) Plaintiff in this case alleges that she was pulled up by her handcuffs. (Pl.'s Dep. at 43.) Plaintiff also alleges that she was gratuitously yanked by the handcuffs or arm around the yard. (*Id.* at 45-47.) Even if not distinguishable, this Court is not required to adopt the *Gorajczyk* court's reasoning or result and declines to do so here.

decisions discussed above. "[T]here need not be a case with the exact same fact pattern or even fundamentally similar or materially similar facts; rather, the question is whether the defendants had fair warning that their actions were unconstitutional." *Grawey,* 567 F.3d at 313-14 (internal quotations marks and citations omitted). Defendant is not entitled to qualified immunity, and his motion for summary judgment is denied as to Plaintiff's Fourth Amendment claims alleging excessive force after she was handcuffed. Material issues of fact remain for trial on Plaintiff's excessive force claims concerning Defendant's conduct <u>after</u> she was handcuffed.

## IV. Conclusion

For the above-stated reasons, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: July 18, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 18, 2011, by electronic and/or ordinary mail.

        s/Karen M. Hillebrand
        Case Manager